UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HUEY DUFFOURC | CIVIL ACTION |
| VERSUS | No. 05-2131 |
| PROGRESSIVE BARGE LINE, INC., *et al.* | SECTION I/3 |

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendant, Murphy Oil USA, Inc. ("Murphy Oil").[1] For the following reasons, defendant's motion is **DENIED.**

### *Background*

On or about May 21, 2005, plaintiff, Huey Duffourc, Jr., was employed by defendant, Progressive Barge Line ("Progressive"), as a tankerman on a push boat that was pushing a tanker barge.[2] One of plaintiff's duties as a tankerman was to assist in the loading of whatever liquid cargo the barge was to carry.[3] On the date in question, Progressive's tanker barge was being loaded with oil at defendant Murphy Oil's refinery facility in Meraux, Louisiana.[4]

---

[1] Rec. Doc. No. 33.

[2] Rec. Doc. No. 33, defendant's statement of uncontested material facts ("SOMF") ¶¶ 1-4.

[3] Rec. Doc. No. 33, exhibit A, deposition of Duffourc, pp. 26, 74-75; deposition of Perrett, pp. 22-26.

[4] Rec. Doc. No. 33, SOMF ¶ 4.

In order to load the barge with oil, a large mechanical loading arm is attached to the barge, and the liquid cargo is transferred via this loading arm, which is stationed on the dock and operated by the "arm operator" or "dockman" employed by Murphy Oil.[5]  The loading arm is like a crane, with several joints for maneuverability, and can be operated manually or by remote control.[6]  The loading arm ends in what is called a header, which is attached to a part of the barge also called a header.[7]  Once connected, these two headers are secured by eight (8) bolts.[8]  One of plaintiff's responsibilities was to line up and then secure the two (2) headers by bolting them into place.[9]  Once the barge was loaded with its fuel cargo, plaintiff would then unbolt the headers and disengage the loading arm header from the barge header.[10]

Due to water currents, at times during the fueling process, the barge shifts in position as it moves with the current.  This leads to tension in the connection between the loading arm and

---

[5] Rec. Doc. No. 33, SOMF ¶ 5; Rec. Doc. No. 33, exhibit A, deposition of Perrett, pp. 24, 36, 37, 45.

[6] Rec. Doc. No. 33, SOMF ¶ 5; Rec. Doc. No. 33, exhibit A, deposition of Duffourc, pp. 116-17; deposition of Perrett, p. 36.

[7] *Id.* at 95, 127-28.

[8] *Id.* at 127-28, 131.

[9] *Id.*

[10] *Id.* at 131-33; *see* Rec. Doc. No. 33, SOMF ¶ 14.

the barge.[11]  Such tension may cause the loading arm to swing or "jump" when the tankerman disconnects the last bolt.[12]

Plaintiff testified that he saw that such tension existed prior to unbolting the last bolt.[13]  He further claims that he made hand signals to the Murphy Oil dockman to move the loading arm in a direction that would minimize the jump which commonly occurred when the headers were finally disconnected.[14]  Despite plaintiff's alleged attempt to prevent the loading arm from jumping, plaintiff claims that the loading arm swung toward him when he unbolted it and, as a result, he was knocked down and injured.[15]

On June 3, 2005, plaintiff brought this action for damages against his employer, Progressive, and the owner of the dock/employer of the arm operator, Murphy Oil.[16]  Plaintiff claims that Murphy Oil is liable for its dockman's failure to exercise reasonable care in operating the loading arm.  On March 13, 2005, Murphy Oil moved for summary judgment, contending that it is entitled to judgment as a matter of law because it did not

---

[11] Rec. Doc. No. 33, SOMF ¶ 6; Rec. Doc. No. 33, exhibit A, deposition of Duffourc, pp. 197, 198, 219.  The tension between the loading arm and the barge is sometimes called a "bind."  *Id.*

[12] *Id.* at 206-07.

[13] *Id.* at 197, 198, 207, 208; *see* Rec. Doc. No. 33, SOMF ¶¶ 7-8.

[14] *Id.* at 133-43, 207.

[15] *Id.* at 145-49.

[16] Rec. Doc. No. 1.

cause or contribute to plaintiff's alleged accident.

## *Law and Analysis*

**I. Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2554; *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990)(citing *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2554; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986)).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward

with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986). The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.*

The parties have not briefed whether plaintiff's negligence claim against the defendant dock owner, Murphy Oil, is governed by maritime law or state law.[17] However, citing *Florida Fuels, Inc. v. CITGO Petroleum Corporation*, Murphy Oil suggests that it, as the dock owner, has a duty to exercise reasonable care to

---

[17] Defendant cites a Fifth Circuit case where the court applied state law because "there was no maritime status" between plaintiff and the defendant-dock owner and the accident occurred on the dock. However, in the present case, it is not entirely clear whether there is a maritime nexus between the parties, whether state law should govern because of a lack of maritime status between the parties, or whether "the locality of the tort" was on navigable waters or on land. *See, e.g., Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807, 814-15 (9th Cir. 2002)("A negligence claim against [a dock owner] may arise under either state law or general maritime law. To create a maritime tort, the incident must have occurred on navigable waters and have a maritime flavor. An incident has maritime flavor if it has a potentially disruptive impact on maritime commerce and a substantial relationship to traditional maritime activity.")(citation footnotes omitted); *Wiper v. Great Lakes Eng'g Works*, 340 F.2d 727, 730 (6th Cir. 1065)(recognizing general rule "that absent a maritime status between the parties the traditional test of locality of the tort governs the question of whether maritime or state law is applicable"). If the parties cannot agree on what law applies in this case, the Court will issue a briefing schedule so that the issue can be adequately addressed prior to trial.

furnish a safe berth and a duty to its business invitees to exercise reasonable care under the circumstances.  *See Florida Fuels*, 6 F.3d 330, 332-33 (5th Cir. 1993) (applying Louisiana law in a case where plaintiff was injured ascending the dock owner's ladder based on lack of maritime status between the parties). Murphy Oil also recognizes that its duty to plaintiff includes responsibility for the acts of its employees.

General maritime law, as opposed to Louisiana law, is the same as land-based common law negligence "free from inappropriate common-law concepts," *i.e.*, concepts such as invitee and licensee.  *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630-31, 79 S. Ct. 406, 409-10, 3 L. Ed. 2d 550 (1959).  Essentially, if maritime law governs plaintiff's claims, defendant would owe a duty of reasonable care under the circumstances regardless of plaintiff's status under Louisiana law as a business invitee.  *See id.*

Regardless of whether plaintiff's negligence claim is governed by maritime law or state law, the issue on summary judgment is whether defendant acted reasonably under the circumstances and whether defendant caused or contributed to plaintiff's injury.  Murphy Oil contends that there is no evidence that its dockman swung the loading arm into plaintiff. Defendant argues that plaintiff himself testified that he does not know whether the loading arm "jumped" due to the actions of

Murphy Oil's dockman who controlled the loading arm or whether it simply jumped due to the tension caused by the barge's shift in position.[18] According to defendant, plaintiff further testified that the loading arm would have swung in his direction even if Murphy Oil's dockman had not moved it.[19] Defendant further argues that the dockman testified that he did not swing the arm and,[20] further, if plaintiff had been knocked down he would have seen it. The dockman has no recollection of witnessing plaintiff fall over the barge railing.[21]

In his opposition memorandum, plaintiff argues that simply because he does not know why the loading arm hit him does not mean that it was not swung by the Murphy Oil dockman. Finally, plaintiff contends that the fact that the dockman did not see plaintiff's fall does not mean that the accident did not occur because, he argues, if the dockman could not see plaintiff while operating the loading arm, then the dockman would not necessarily have seen plaintiff fall.

Murphy Oil also contends that it did not cause or contribute to plaintiff's accident because plaintiff is entirely responsible for his alleged injuries. In so arguing, defendant identifies

---

[18] Rec. Doc. No. 33, defendant's memorandum in support, pp. 3-4 (citing deposition of Duffourc, pp. 143, 144, 219).

[19] Rec. Doc. No. 33, exhibit A, deposition of Duffourc, p. 219.

[20] Rec. Doc. No. 33, exhibit A, deposition of Perrett, pp. 38, 50.

[21] *Id.* at 48, 49, 50-52, 61-63.

two undisputed facts: (1) plaintiff did not make use of the rope or chain which is provided for attachment to the loading arm so that a tankerman can secure his end of the loading arm and keep it from jumping upon disconnection of the final bolt, and (2) plaintiff stood on the upriver side of the loading arm despite the fact that plaintiff knew that the arm would swing in his direction once he unbolted it.[22]  Plaintiff counters that he did not choose to stand in harm's way, but that he could stand nowhere else and still perform the duties of his job.

While plaintiff's failure to use the rope or chain provided, as well as his location on the barge in relation to the loading arm, may constitute some degree of comparative fault, these undisputed facts are not dispositive of Murphy Oil's liability. With respect to the alleged negligence of Murphy Oil, plaintiff directs the Court to the testimony of Alwin Perrett, Murphy Oil's dockman/arm operator, who testified that when the loading arm is in a bind created by tension, the loading arm will move "very little" which he estimated to be a maximum of approximately six (6) inches.[23]  In order to move more than that, Perrett testified that the arm would have to be moved by the dockman through the controller.[24]  Captain Bond, plaintiff's supervisor aboard the

---

[22] Rec. Doc. No. 33, SOMF ¶¶ 13, 11.

[23] Rec. Doc. No. 33, exhibit A, deposition of Perrett, pp. 107, 116-17.

[24] *Id.* at 115-17.

barge, testified, however, that under tension a loading arm will swing on its own as much as four (4) feet.[25] The testimony of these two witnesses creates a genuine issue as to the cause of the loading arm's "jump."

Moreover, the fact that the dockman did not see plaintiff fall suggests at least two distinct possibilities: (1) plaintiff was not knocked down by the loading arm or (2) the dockman failed to maintain visual contact with plaintiff while operating the loading arm. Either way, plaintiff has established that a genuine issue of material fact exists as to whether Murphy Oil's arm operator caused the loading arm to swing, thereby causing plaintiff's injuries. In view of these disputed facts, it cannot be said that there are no genuine issues of material fact as to Murphy Oil's negligence. Accordingly,

**IT IS ORDERED** that the motion of defendant, Murphy Oil USA, Inc., for summary judgment is **DENIED.**

New Orleans, Louisiana, June  13th , 2006.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[25] Rec. Doc. No. 55, defendant's supplemental memorandum, exhibit B, deposition of Bond, pp. 60-61.